## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAIGE VAN PELT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CIGNA GROUP, CIGNA CORPORATION, and CIGNA HEALTH AND LIFE INSURANCE COMPANY.<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br><br>Dated: August 25, 2023 |

Plaintiff Paige Van Pelt ("Plaintiff"), individually and on behalf of all others similarly situated, brings the following complaint against The Cigna Group, Cigna Corporation, and Cigna Health and Life Insurance Company (collectively "Cigna" or "Defendants"), and alleges as follows, based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to Plaintiff, which are based on her personal knowledge.

## I.    INTRODUCTION

1.    Every year tens of millions of Americans receive preventative and life-saving medical treatment, only to be confronted with a bill that makes their lives exponentially more difficult. Indeed, the United States has one of the highest healthcare costs in the world. In 2021, U.S. healthcare reached $4.3 trillion, which averages to approximately $12,900 per person. In stark contrast, a recent study from *Fortune* found that more than half of all Americans are living paycheck to paycheck. This reality leaves Americans with an impossible choice: have food on the table or pay their medical bills.

2.      Americans have one primary bulwark against this unfortunate reality, and that lies with their medical insurers.  The role of medical insurers is purportedly to defend their clients from impossible financial medical burdens, through promoting proactive healthcare prevention, providing coverage for medically necessary health care services and procedures for individuals and families, and protecting people financially from exceptional health care costs.  In this regard, medical insurers are not only the gateway to health care services but are fiduciaries.

3.      Cigna is the one of the largest medical insurers in the United States.[1]

4.      Despite its role in protecting already over-burdened Americans from healthcare-induced financial hardship, Cigna has leveraged its sophisticated infrastructure and automated intelligence capabilities to systematically defraud its consumers by denying medically necessary claims *en masse* without appropriate physician review, in violation of state and federal consumer protection laws.[2]  Cigna's practices thus, have caused Plaintiff and the putative Class to pay for medical services that should have otherwise been approved under plan terms and enable Cigna to save millions, if not billions, of dollars on its bottom line.

5.      Cigna furthered this scheme to defraud Plaintiff and the Class through an automated intelligence system referred to as "procedure-to-diagnosis" (referred to as "PxDx").  PxDx allows Cigna medical directors to automatically deny a claim purportedly on medical grounds without making a medically necessary determination or even opening the patient file, leaving patients with unexpected bills that should have been covered and paid.  Indeed, Cigna automatically denies

---

[1]      Out of all the companies in the United States, Cigna was ranked fifteen in the 2023 Fortune 500 list of largest U.S. corporation by total revenue—revenue for the twelve months ending June 30, 2023 was $186.135B, a 3.72% increase year-over-year.

[2]      As alleged herein, Cigna engaged in unfair claim settlement practices by *inter alia*, "refusing to pay claims without conducting a reasonable investigation based upon all available information." *See* Conn. Gen. Stat. §38a-816(6)(D).

claims because it knows that most patients will either pay such bills or forego the procedures, rather than deal with the hassle of appealing a denial.

6.      The impact on Cigna's insureds is devastating.  Indeed, as discussed further below, in a period of just over two months, Cigna medical directors reportedly automatically denied, without review, over 300,000 requests for payments, spending an average of 1.2 seconds on each case.

7.      Cigna's self-interest is obvious — the more claims it automatically denies (even without any justification), the more money it saves and the larger its profits are.  This is all the more egregious because Cigna is a fiduciary to Plaintiff and the Class.  Cigna must interpret the terms of each plan as a fiduciary, and it has breached its duty of care and loyalty to Plaintiff and the Class by systematically denying claims without proper review.  Moreover, Cigna did not provide the coverage that it was obligated to provide under the health plan.

8.      Plaintiff and the Class are therefore not receiving the benefits they have paid for, and in many cases are left paying out-of-pocket for medical care that should have been covered by Cigna.  Plaintiff and the Class have been harmed through *inter alia*, violations of the Connecticut Unfair Trade Practices Act through violating the Connecticut Unfair Insurance Practices Act and the Connecticut Corrupt Organizations and Racketeering Activity Act, breach of contract, as well as violations of the covenant of good faith and fair dealing, and unjust enrichment.  Plaintiff seeks all compensatory, punitive, injunctive, equitable, and all other relief as permissible by law on behalf of herself and the putative Class.

## II.      **JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because the amount in controversy exceeds $75,000.00, and Plaintiff and Cigna are residents and citizens of different states.

10.     The Court has personal jurisdiction over Defendants because they do business in the District of Connecticut and have sufficient minimum contacts with the District.  Defendants intentionally avail themselves of the markets in this State through the promotion, marketing, and operations of their platforms at issue in this lawsuit in Connecticut, and by retaining the profits and proceeds from these activities, to render the exercise of jurisdiction by this Court permissible under Connecticut law.

11.     Venue in this Court is proper under 28 U.S.C. §§1391(b)(1), (2), (3), and (c)(2). Defendants are headquartered in this District, reside in this District, and a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District, and Cigna is subject to the Court's personal jurisdiction with respect to this action.

## III.     PARTIES

### A.     Plaintiff

12.     Plaintiff resides in Aitkin, Minnesota and was enrolled in a self-funded Cigna Plan throughout 2018.  The written terms of this Plan provided benefits for covered health care services. The Plan further specified that Cigna provides claim administration services to the Plan as the party delegated with authority to interpret and apply the terms of financial disbursement.  Plaintiff has Lynch Syndrome — a type of inherited cancer syndrome associated with a genetic predisposition to different cancer types.  In order to prevent cancerous growths, Plaintiff is required to have a colonoscopy once every 1-2 years.  In 2018, Cigna automatically denied coverage for her colonoscopy and endoscopy, because the clinic coded it as diagnostic instead of preventative. As a result, Plaintiff was charged $3,200 which has since been sent to collections.  Plaintiff has been financially damaged by Cigna's practices, and her credit score lowered as a result of being automatically denied coverage for the preventative care that she desperately required.  Had Plaintiff known that Cigna had a practice of automatically and algorithmically denying claims and

that the healthcare disbursements she required would be financially withheld, she would have enrolled with another plan or paid less for her plan had their bargaining power been equal.

**B.**     **Defendants**

13.     The Cigna Group is a for-profit American multinational managed healthcare and insurance company based in Bloomfield, Connecticut and incorporated in Delaware.

14.     Cigna Corporation conducts insurance and operations for the The Cigna Group and is headquartered at 900 Cottage Grove Road, Bloomfield, Connecticut 06002, and incorporated in Connecticut.

15.     Cigna Health and Life Insurance Company markets and issues health insurance and is also headquartered at 900 Cottage Grove Road, Bloomfield, Connecticut 06002, and incorporated in Connecticut.

16.     The Cigna Group, Cigna Corporation, and Cigna Health and Life Insurance Company are referred to herein as "Cigna".

## IV.     FACTUAL ALLEGATIONS

17.     Cigna is engaging in unfair claim settlement practices by, *inter alia*, "refusing to pay claims without conducting a reasonable investigation based upon all available information." Conn. Gen. Stat. § 38a-816(6)(D).

18.     A March 2023 article from ProPublica identified Cigna's use of this program to deny claims without review of medical records.[3]

---

[3]     *See* Patrick Rucker, Maya Miller, and David Armstrong, *How Cigna Saves Millions by Having Its Doctors Reject Claims Without Reading Them*, PROPUBLICA, https://www.propublica.org/article/cigna-pxdx-medical-health-insurance-rejection-claims (last updated April 14, 2023).

19.     For example, over a period of two months, Cigna doctors reportedly denied over 300,000 requests for payments using PxDx, spending an average of 1.2 seconds on each case, documents submitted to reporters at ProPublica show.[4]

20.     "Before health insurers reject claims for medical reasons, company doctors must review them, according to insurance laws and regulations in many states. Medical directors are expected to examine patient records, review coverage policies and use their expertise to decide whether to approve or deny claims, regulators said.  This process helps avoid unfair denials."[5]

21.     "But the Cigna review system . . . bypasses those steps. Medical directors do not see any patient records or put their medical judgment to use, said former company employees familiar with the system. Instead, a computer does the work. A Cigna algorithm flags mismatches between diagnoses and what [Cigna] considers acceptable tests and procedures for those ailments. Company doctors then sign off on the denials in batches, according to interviews with former employees who spoke on condition of anonymity."[6]

22.     ProPublica article further reported that its investigation revealed that former Cigna employees admitted that "medical directors do not see any patient records or put their medical judgment to use." Instead, PXDX utilizes an algorithm to determine whether to approve or deny claims and that Cigna's "doctors then sign off on the denials in batches." A former employee from Cigna stated: "'We literally click and submit,' one former Cigna doctor said. 'It takes all of 10 seconds to do 50 at a time.'"[7]

---

[4]     *Id.*

[5]     *Id.*

[6]     *Id*.

[7]     *Id*.

23.     "Not all claims are processed through this review system. For those that are, it is unclear how many are approved and how many are funneled to doctors for automatic denial."[8]

24.     On information and belief, Cigna's "PxDx" review system was developed more than a decade ago by a former pediatrician.

25.     In 2010, Dr. Alan Muney ("Muney") was "managing health insurance for companies owned by Blackstone, the private equity firm, when Cigna tapped him to help spot savings in its operation."[9]

26.     "Insurers have wide authority to reject claims for care, but processing those denials can cost a few hundred dollars each, former executives said. Typically, claims are entered into the insurance system, screened by a nurse and reviewed by a medical director."[10]

27.     "At Cigna, Muney and his team created a list of tests and procedures approved for use with certain illnesses. The system would automatically turn down payment for a treatment that didn't match one of the conditions on the list. Denials were then sent to medical directors, who would reject these claims with no review of the patient file."[11]

28.     "Cigna eventually designated the list "PxDx" — corporate shorthand for procedure-to-diagnosis. The list saved money in two ways. It allowed Cigna to begin turning down claims that it had once paid. And it made it cheaper to turn down claims, because the company's doctors never had to open a file or conduct any in-depth review. They simply denied the claims in bulk with an electronic signature."

---

[8]      *Id.*

[9]      *Id.*

[10]     *Id.*

[11]     *Id.*

29.     "'The PxDx stuff is not reviewed by a doc or nurse or anything like that,' Muney said."[12]

30.     "The review system was designed to prevent claims for care that Cigna considered unneeded or even harmful to the patient, Muney said. The policy simply allowed Cigna to cheaply identify claims that it had a right to deny."[13]

31.     "[T]wo former Cigna doctors, who did not want to be identified by name for fear of breaking confidentiality agreements with Cigna, said the system was unfair to patients. They said the claims automatically routed for denial lacked such basic information as race and gender."[14]

32.     "'It was very frustrating,' one doctor said."[15]

33.     "Medicare and Medicaid have a system that automatically prevents improper payment of claims that are wrongly coded. It does not reject payment on medical grounds."[16]

34.     "Within the world of private insurance, Muney is certain that the PxDx formula has boosted the corporate bottom line. 'It has undoubtedly saved billions of dollars,' he said."[17]

35.     "Insurers benefit from the savings, but everyone stands to gain when health care costs are lowered and unneeded care is denied, he said."[18]

---

[12]     *Id.*

[13]     *Id.*

[14]     *Id.*

[15]     *Id.*

[16]     *Id.*

[17]     *Id.*

[18]     *Id.*

36.    "Cigna carefully tracks how many patient claims its medical directors handle each month. Twelve times a year, medical directors receive a scorecard in the form of a spreadsheet that shows just how fast they have cleared PxDx cases."[19]

37.    One doctor "rejected 121,000 claims in the first two months of 2022, according to the scorecard[,]":[20]

Category of Treatment: Outpatient

| Claim Reference | Date(s) of Service | Claim Total Charge | Charges Not Paid By Your Health Plan |
|---|---|---|---|
| ██████████ | 11/03/2021 – 11/03/2021 | $1,126.00 | $358.00 |

Cigna Health Management, Inc., on behalf of ████████████████

Dear Nicolas J Van Terheyden,

We received claim ██████████ for services received between 11/03/2021 – 11/03/2021 from Labcorp Holdings. You are receiving this letter because, as noted on your Explanation of Benefits, there is a service we cannot cover under your benefit plan because the treatment is not medically necessary. The dollar amount of the service not covered, the description, and reason why the service is not covered is noted below. Please see your Explanation of Benefits statement for information regarding coverage for other services provided.

Note: We sent this letter to meet federal and state requirements.

38.    "Dr. Richard Capek, another Cigna medical director, handled more than 80,000 instant denials in the same time span, the spreadsheet showed."[21]

39.    "Dr. Paul Rossi has been a medical director at Cigna for over 30 years. Early last year, the physician denied more than 63,000 PxDx claims in two months."[22]

40.    "Cigna knows that many patients will pay such bills rather than deal with the hassle of appealing a rejection, according to . . . former employees of the company. The PxDx list is

---

[19]    *Id*.

[20]    *Id.* (quote and scorecard image).

[21]    *Id*.

[22]    *Id*.

focused on tests and treatments that typically cost a few hundred dollars each, said former Cigna employees."[23]

41.     "Muney and other former Cigna executives emphasized that the PxDx system does leave room for the patient and their doctor to appeal a medical director's decision to deny a claim."[24]

42.     "But Cigna does not expect many appeals. In one corporate document, Cigna estimated that **only 5% of people** would appeal a denial resulting from a PxDx review."[25]

43.     "In 2014, Cigna considered adding a new procedure to the PxDx list to be flagged for automatic denials."[26]

44.     "Autonomic nervous system testing can help tell if an ailing patient is suffering from nerve damage caused by diabetes or a variety of autoimmune diseases. It's not a very involved procedure – taking about an hour – and it costs a few hundred dollars per test."[27]

45.     "The test is versatile and noninvasive, requiring no needles. The patient goes through a handful of checks of heart rate, sweat response, equilibrium and other basic body functions."[28]

46.     "At the time, Cigna was paying for every claim for the nerve test without bothering to look at the patient file, according to a corporate presentation. Cigna officials were weighing the

---

[23]     *Id*.

[24]     *Id*.

[25]     *Id*.

[26]     *Id*.

[27]     *Id*.

[28]     *Id*.

cost and benefits of adding the procedure to the list. 'What is happening now?' the presentation asked. 'Pay for all conditions without review.'"[29]

47.     "By adding the nerve test to the PxDx list, Cigna officials estimated, the insurer would turn down more than 17,800 claims a year that it had once covered. It would pay for the test for certain conditions, but deny payment for others."[30]

48.     "These denials would 'create a negative customer experience' and a 'potential for increased out of pocket costs,' the company presentation acknowledged."[31]

49.     "But they would save roughly $2.4 million a year in medical costs, the presentation said."[32]

50.     As one doctor said, "It's not good medicine. It's not caring for patients. You end up asking yourself: Why would they do this if their ultimate goal is to care for the patient?"[33]

## V.     CLASS ALLEGATIONS

51.     Plaintiff brings this class action lawsuit pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4) on behalf of a Nationwide Class and Minnesota Subclass as defined as follows:

### NATIONWIDE CLASS

52.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiff seeks certification of a Nationwide Class defined as follows:

---

[29]     *Id*.

[30]     *Id*.

[31]     *Id*.

[32]     *Id*.

[33]     *Id*.

> All persons in the United States and its territories who had their claims approved or denied using the PxDx automated review process.

## **STATE SUBCLASS**

53.     In addition to, or as an alternative to, the Nationwide Class and according to Rule 23(c)(5), Plaintiff seeks to represent all members of the following Subclass of the Nationwide Class ("Minnesota Subclass") for the jurisdiction below:

## **MINNESOTA**

> All persons who reside in the State of Minnesota who had their claims approved or denied using the PxDx automated review process.

54.     Plaintiff reserves her right, before the Court determines whether certification is appropriate, to redefine the proposed Nationwide Class, or to propose subclasses, if necessary, including, but not limited to, state subclasses and/or entity subclasses.

55.     Unless otherwise stated, the above-defined Nationwide Class and the Minnesota Subclass are referred to as the "Class."

56.     Excluded from the Class are Defendants and their officers, executives, subsidiaries and affiliates; governmental entities; and the Judge to whom this case is assigned and their immediate family.  Plaintiff reserves the right to revise the definition of any Class based on information learned through discovery.

57.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

58.     This action has been brought and may be properly maintained on behalf the Class proposed herein under Rule 23.

59.     **Numerosity**:   Rule 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable.  While Plaintiff is informed and believes (based on publicly available reports concerning the PxDx claims process) that there are at least tens of thousands of Class Members, the precise number of Class Members is unknown to Plaintiff.  Still, it may be ascertained from Cigna's books and records.

60.     **Commonality and Predominance**: Rule 23(a)(2) and (b)(3): This action involves common questions of law and fact which predominate over any questions affecting individual Class Members, including, without limitation:

    a.      Whether Cigna engaged in the conduct alleged herein;

    b.      Whether Cigna had a duty to disclose relevant information about PxDx;

    c.      Whether Cigna concealed and omitted information about PxDx;

    d.      Whether Cigna breached contracts;

    e.      Whether Plaintiff and other Class Members are entitled to declaratory judgment;

    f.      Whether Plaintiff and other Class Members are entitled to equitable relief, including a preliminary injunction;

    g.      Whether Cigna was or is obligated to inform Class Members of any potential claims; and

    h.      Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief and, if so, in what amount.

61.     **Typicality**: Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class Members' claims because, among other things, all Class Members were comparably injured through Cigna's wrongful conduct as described above.

62.     **Adequacy**: Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class Representative because her interests do not conflict with the interests of the other Class Members she seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to prosecute this action vigorously.  Plaintiff and her counsel will fairly and adequately protect the Class's interests.

63.     **Declaratory Relief**: Federal Rule of Civil Procedure 23(b)(2): Cigna has acted or refused to act on grounds generally applicable to Plaintiff and Class Members, thereby making declaratory relief appropriate with respect to each Class as a whole.

64.     **Superiority**: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the Class Members to individually seek redress for Cigna's wrongful conduct.  Even if Class Members could afford individual litigation, such litigation creates a potential for inconsistent or contradictory judgments.  It increases the delay and expense to all parties and the court system.  By contrast, a class action is suited and intended to manage such difficulties and provide the benefits of uniform and common adjudication, economy of scale, and comprehensive supervision.

## VI.    TOLLING OF STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

65.    Class Members had no way of knowing about Cigna's deception concerning the use of PxDx in the clams approval process.

66.    Within the time period of any applicable statutes of limitation, Plaintiff and other Class Members could not have discovered through the exercise of reasonable diligence that Cigna was fraudulently, deceptively, and unfairly utilizing PxDx in the claims approval process in breach of their contracts and to the direct benefit of Cigna.

67.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule for the claims asserted herein.

### B.    Fraudulent Concealment Tolling

68.    All applicable statutes of limitation have also been tolled by Cigna's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

69.    Rather than disclose that an automated system denied Plaintiff's claims, Defendants falsely represented that the claims process had been supervised by medical personal in accordance with state and federal regulations.

### C.    Estoppel

70.    Defendants were under a continuous duty to disclose their unfair and unlawful conduct to Plaintiff and the Class.  Based on the above, Cigna is estopped from relying on any statutes of limitations in defense of this action.

## VII.    CHOICE OF LAW PROVISIONS

71.    Because Plaintiff brings this complaint in Connecticut, Connecticut's choice of law regime governs the state law allegations in this complaint.  Under Connecticut's choice of law

rules, Connecticut law applies to the claims of all Class Members, regardless of their state of residence, as Plaintiff believes there is no conflict between Connecticut's law and the laws of other states with an interest in the outcome of this litigation.

72.     Cigna's headquarters are and were in Connecticut, and the misconduct complained of originated in Connecticut.  All Class Members — even those who never stepped foot in Connecticut but had a Cigna policy — directly implicate Connecticut's interest in regulating businesses and commerce.

73.     Because Cigna sells policies in Connecticut and the subject matter of this litigation arises under Cigna's connections to Connecticut, Connecticut has a strong interest in regulating businesses and commerce in the States.

**VIII.   CLAIMS FOR RELIEF**

**COUNT ONE**

**VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA")
THROUGH VIOLATION OF THE CONNECTICUT UNFAIR INSURANCE
PRACTICES ACT ("CUIPA")
(On Behalf of the Nationwide Class and Minnesota Subclass)**

74.     Plaintiff repeats, reasserts, and incorporates the allegations contained in paragraphs 1 - 73 as if fully set forth herein.

75.     Cigna has acted, as alleged herein, in the conduct of trade or commerce as defined in Conn. Gen. Stat. §42-110a(4).

76.     CUIPA states, "No person shall engage in this state in any trade practice which is defined in section 38a-816 as, or determined pursuant to sections 38a-817 and 38a-818 to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance,

nor shall any domestic insurance company engage outside of this state in any act or practice defined in subsections (1) to (12), inclusive, of section 38a-816."[34]

77.    Cigna engaged in unfair claim settlement practices by *inter alia*, "refusing to pay claims without conducting a reasonable investigation based upon all available information." *See* Conn. Gen. Stat. §38a-816(6)(D).

78.    Cigna has also regularly been engaged in the following conduct in violation of CUIPA: (i) misrepresenting "the benefits, advantages, conditions, or terms of any insurance policy" in violation of Conn. Gen. Stat. §38a-816(1)(A); (ii) "[m]aking, publishing, disseminating, circulating or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading" in violation of Conn. Gen. Stat. §38a-816(2); and (iii) "[m]aking false or fraudulent statements or representations on or relative to an application for an insurance policy for the purpose of obtaining a fee, commission, money or other benefit from any insurer, producer or individual" in violation of Conn. Gen. Stat. §38a-816(8).

79.    Cigna's violations of CUIPA are violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110b(a) and give rise to a cause of action under Conn. Gen. Stat. §42-110g(a).

---

[34]    Conn. Gen. Stat. §38a-815

80.     Cigna's conduct is part of a general business practice that constitutes unfair and deceptive acts in violation of Conn. Gen. Stat. §42-110b(a).

81.     As a direct and proximate result of Cigna's violation of CUTPA, Conn. Gen. Stat. §42-110b(a), Plaintiff and the Class members have suffered ascertainable losses under Conn. Gen. Stat. §42-110g(a) in an amount to be proved at trial.

82.     As a result of Cigna's unfair and/or deceptive acts or practices, Cigna has reaped ill-gotten profits and gains, which they otherwise would not have received and which in equity, they should be required to disgorge.

83.     Cigna is liable, pursuant to Conn. Gen. Stat. §42-110g(a), for punitive damages.

84.     Furthermore, Cigna is liable, pursuant to Conn. Gen. Stat. §42-110g(d), for costs and reasonable attorneys' fees.

85.     Plaintiff also seeks an injunction on behalf of himself and the Class prohibiting Cigna from violating CUTPA and/or CUIPA, and breaching the Policy's terms, pursuant to Conn. Gen. Stat. §42-110g(d).

86.     In compliance with Conn. Gen. Stat. §42-110g(c), a copy of this Class Action Complaint has been mailed to the Attorney General of the State of Connecticut and Connecticut's Commissioner of Consumer Protection on this date.   A copy has also been submitted to the Connecticut Insurance Department.

**COUNT TWO**

**VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA")
THROUGH VIOLATION OF THE CONNECTICUT CORRUPT ORGANIZATIONS
AND RACKETEERING ACTIVITY ACT ("CORA")
(On Behalf of the Nationwide Class and Minnesota Subclass)**

87.     Plaintiff repeats, reasserts, and incorporates the allegations contained in paragraphs 1 - 86 as if fully set forth herein.

88.     Cigna has acted, as alleged herein, in the conduct of trade or commerce as defined in Conn. Gen. Stat. §42-110a(4).

89.     As set forth above, Cigna, in violation of CORA, engaged in racketeering activity, including fraudulently, deceptively, and unfairly scheming to implement an automated system whereby claims would be automatically denied in violation of state and federal insurance laws in order to unlawfully enrich themselves at the expense of Plaintiff and the Class in violation of Conn. Gen. Stat. §53-395(a) and (c).

90.     As set forth above, Cigna, in violation of CORA, engaged in a pattern of racketeering activity, including engaging in at least two incidents of racketeering activity that: (i) have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguished characteristics; and (ii) are not isolated incidents, all in violation of Conn. Gen. Stat. §42-110a *et seq.*

91.     Cigna's violations of CORA are violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110b(a), and give rise to a cause of action under Conn. Gen. Stat. §42-110g(a).

92.     Cigna's conduct is part of a general business practice that constitutes unfair and deceptive acts in violation of Conn. Gen. Stat. §42-110b(a).

93.     As a direct and proximate result of Cigna's racketeering conspiracy and violations of CUTPA, Conn. Gen. Stat. §42-110b(a), Plaintiff and the Class members have suffered ascertainable losses under Conn. Gen. Stat. §42-110g(a) in an amount to be proved at trial.

94.     As a result of Cigna's unfair and/or deceptive acts or practices, Cigna has reaped ill-gotten profits and gains, which they otherwise would not have received and which, in equity, they should be required to disgorge.

95.     Cigna is liable, pursuant to Conn. Gen. Stat. §42-110g(a), for punitive damages.

96.     Furthermore, Cigna is liable, pursuant to Conn. Gen. Stat. §42-110g(d), for costs and reasonable attorneys' fees.

97.     Plaintiff also seeks an injunction on behalf of himself and the Class prohibiting Cigna from violating CUTPA and/or CORA, and breaching the Policy's terms, pursuant to Conn. Gen. Stat. §42-110g(d).

98.     In compliance with Conn. Gen. Stat. §42-110g(c), a copy of this Class Action Complaint has been mailed to the Attorney General of the State of Connecticut and Connecticut's Commissioner of Consumer Protection on this date.   A copy has also been submitted to the Connecticut Insurance Department.

## COUNT THREE

### BREACH OF CONTRACT
### (On Behalf of the Nationwide Class and Minnesota Subclass)

99.     Plaintiff repeats, reasserts, and incorporates the allegations contained in paragraphs 1-98 as if fully set forth herein.

100.    Cigna formed an agreement and entered into a contract of insurance with Plaintiff and the Class, namely through each policy, including offer, acceptance, and consideration.

101.    Pursuant to each policy, Plaintiff and the Class paid money to Cigna in exchange for Cigna providing benefits under a group insurance policy to Plaintiff and the Class.

102.    Each policy included, without limitation, Cigna's duty to exercise its fiduciary duties to policyholders, abide by applicable state and federal laws, and adequately review and inform policyholders prior to a claim denial.

103.    Plaintiff and the Class performed their obligations under the contract by paying the amounts due under the contract timely.

104.    Cigna breached each policy by, without limitation, failing to keep its promise to fulfill its duty to exercise its fiduciary duties to policyholders, abide by applicable state and federal laws, and adequately review and inform policyholders prior to a claim denial.

105.    As a direct and proximate result of Cigna's breach of contract, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

**COUNT FOUR**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class and Minnesota Subclass)**

106.    Plaintiff repeats, reasserts, and incorporates the allegations contained in paragraphs 1-105 as if fully set forth herein.

107.    By delegating the claims review process to the automated PxDx system, Cigna knowingly charged Plaintiff and the Class members insurance premiums for services that Cigna failed to deliver.  This was done in a manner that was unfair, unconscionable, and oppressive.

108.    Cigna knowingly received and retained wrongful benefits and funds from Plaintiff and the Class members.  In so doing, Cigna acted with conscious disregard for the rights of Plaintiff and the Class members.

109.    As a result of Cigna's wrongful conduct as alleged herein, Cigna has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class members.

110.    Cigna's unjust enrichment is traceable to and resulted directly and proximately from the conduct alleged herein.

111.    Under the common law doctrine of unjust enrichment, it is inequitable for Cigna to be permitted to retain the benefits they received (without justification) by arbitrarily denying medical payments owed to their insureds, under Cigna's policies, in an unfair, unconscionable,

and oppressive manner. Cigna's retention of funds under such circumstances makes it inequitable for Cigna to retain those funds and constitutes unjust enrichment.

112.    The financial benefits derived by Cigna rightfully belong to Plaintiff and the Class members. Cigna should be compelled to return, in a common fund for the benefit of Plaintiff and the Class members, all wrongful or inequitable proceeds received by Cigna.

113.    Plaintiff and the members of the Class have no adequate remedy at law.

## COUNT FIVE

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
#### (On Behalf of the Nationwide Class and Minnesota Subclass)

114.    Plaintiff repeats, reasserts, and incorporates the allegations contained in paragraphs 1-113 as if fully set forth herein.

115.    Plaintiff brings this claim for breach of the implied covenant of good faith and fair dealing against Cigna on behalf of the Class.

116.    Plaintiff and the Class members entered into written contracts with Cigna, which provided coverage for medical services administered by healthcare providers.

117.    Pursuant to those contracts, in exchange for insureds' premium payments, Cigna implied and covenanted that they would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of Plaintiff's and the Class members' claims.

118.    Cigna has breached its duty of good faith and fair dealing by, among other things:

    a.    improperly delegating their claims review function to the PxDx system, which uses an automated process to improperly deny claims;

    b.    allowing their medical directors to sign off on the denials in batches without individually reviewing each patient's file; and

  c.  failing to have their medical directors conduct a thorough, fair, and objective investigation of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims to avoid unfair denials.

119. Cigna's practices as described herein violated their duties to Plaintiff and the Class members under the insurance contracts.

120. Cigna's practices as described herein violated their duties to Plaintiff and the Class members under Connecticut law.

121. Cigna's practices as described herein constitute an unreasonable denial of Plaintiff's and the Class members' rights to a thorough, fair, and objective investigation of each of their claims by a doctor and breach the implied covenant of good faith and fair dealing arising from Cigna's insurance contracts.

122. Cigna's practices as described herein further constitute an unreasonable denial to pay benefits due to Plaintiff and the Class members in breach of the implied covenant of good faith and fair dealing arising from Cigna's insurance contracts.

123. Cigna's wrongful denial of Plaintiff's and the Class members' right to a thorough, fair, and objection investigation and wrongful denial of claims damaged Plaintiff and the Class members.

124. As a direct and proximate result of Cigna's breaches, Plaintiff and the Class members have suffered, and will continue to suffer in the future, economic losses including: the benefits owed under their health insurance plans; the interruption of Plaintiff's and the Class members' businesses; and other general, incidental, and consequential damages, in amounts

according to proof at trial.  Plaintiff and the Class members also seek statutory and pre- and post-judgment interest against Cigna.

125.    Cigna's misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, and therefore Plaintiff and the Class members seek punitive damages against Cigna.

126.    By reason of Cigna's conduct as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the present action.  Plaintiff therefore seeks reasonable attorneys' fees and litigation expenses, including expert witness fees and costs incurred in bringing this action.

## IX.    <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff prays for judgment and relief in her favor and in favor of the Class; and against Defendants and that Defendants be cited, according to law, to appear and answer herein; that after notice and upon final hearing, a PERMANENT INJUNCTION be issued, restraining and enjoining Defendants, as well as Defendants' successors, assigns, officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, from engaging in the acts or practices complained of herein.  In addition, Plaintiff respectfully prays that this Court will:

A.    Order Defendants to restore all money or other property taken from identifiable persons by means of unlawful acts or practices and award judgment for damages in an amount within the jurisdictional limits of this Court to compensate for such losses;

B.    Order the disgorgement of all sums unlawfully taken from consumers for the benefit of Plaintiff and the Class;

C.    Certify this action and the Class as requested herein, appointing Plaintiff as Class Representative and appointing her counsel as Class Counsel;

     D.      Award Plaintiff and the Class members actual damages, plus costs and reasonable and necessary attorneys' fees, and any other relief the Court determines is proper, pursuant to Conn. Gen. Stat. §42-110g(d);

     E.      Award restitution and disgorgement of Cigna's revenues to Plaintiff and the Class;

     F.      Award punitive damages to Plaintiff and Class members, pursuant to Conn. Gen. Stat. §42-110g(a) and Conn. Gen. Stat. §52-564; and

     G.      Provide such other and further relief as the Court may deem just and proper.

## X.    <u>JURY TRIAL DEMANDED</u>

Under Federal Rules of Civil Procedure, Rule 38, Plaintiff demands a trial by jury.

Dated: August 25, 2023

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

<u>/s/ Joseph P. Guglielmo</u>
Joseph P. Guglielmo (CT 27481)
Amanda Rolon  (*Pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
arolon@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Erin Green Comite (CT 24886)
Anja Rusi (CT 30686)
156 South Main Street
P.O. Box 192
Colchester, Connecticut 06415
Tel. (800) 404-7770
ecomite@scott-scott.com
arusi@scott-scott.com

**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi (*Pro hac vice* forthcoming)
Michael A. Innes  *Pro hac vice* forthcoming)

25

Jordan M. Steele  *Pro hac vice* forthcoming)
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com
minnes@carellabyrne.com
jsteele@carellabyrne.com

**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
Zachary S. Bower (*Pro hac vice* forthcoming)
2222 Ponce De Leon Blvd.
Miami, Florida 33134
Tel.: (973) 994-1700
zbower@carellabyrne.com

*Attorneys for Plaintiff*